CAMILLE LATOUCHE,
218 North Charles St., Apt 1907
Baltimore MD 21201
On her own behalf and on behalf of others
similarly situated,

              Plaintiff,

    v.

TRUE RELIGION APPAREL, INC
c/o CSC-Lawyers Incorporating Service 2710
Gateway Oaks Drive, Suite 150N Sacramento
CA 95833
and
TRUE RELIGION SALES, LLC,
c/o CSC-Lawyers Incorporating Service
Company, 7 Paul Street, Suite 820, Baltimore
MD 21202

              Defendants.

IN THE CIRCUIT COURT FOR

BALTIMORE CITY

Case No.:      C-24-CV-26-000738

JURY TRIAL DEMANDED

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW, the Plaintiff Camille LaTouche ("Plaintiff") on behalf of herself and the class set forth and states and follows:

## I.    NATURE OF THE ACTION

1.    This is a class action against True Religion Apparel, Inc. and True Religion Sales, LLC ("True Religion" or "Defendants") for illegally sending false and misleading emails. Defendants use different types of false and misleading information in email subject lines to trick consumers into opening their email and making purchases. For example, an email subject line will claim: "$14.99 Styles End at MIDNIGHT ⏰." But the next day, True Religion sends emails stating the sale has been "EXTENDED." Both email subject lines are false and misleading: Defendants never intended to only offer the sale until midnight and planned for it to be offered for a longer period of time. Defendants have a pattern and practice of advertising fake sale extensions.

2.    Defendants send these emails with false and misleading subject lines to create the illusion of a good deal and impart a sense of urgency and induce fear in consumers that they might

1

miss out on that good deal, spurring consumers to make purchases in a hurry and thereby increasing Defendants' sales revenue.

3.      Defendants also use their illusory "sales" and preplanned extensions as an excuse to send consumers additional emails purporting to notify them that a sale is being offered, is ending, or that a sale has been extended.  This practice causes consumers' inboxes to become inflated with spam.

4.      Defendants' practice of sending serial emails about illusory sales with imaginary time limits and fake extensions violates the Maryland Commercial Electronic Mail Act ("MCEMA"), Maryland Code Annotated, Commercial Law §§14-3001, *et seq*.

5.      By sending emails with false and misleading information to Plaintiff and the Class (defined below), Defendants clog email inboxes with false information and violate Plaintiff's and Class members' right to be free from deceptive commercial emails.

6.      Plaintiff brings this action as a class action on behalf of persons residing in Maryland who also received Defendants' false and misleading emails. Plaintiff's requested relief includes an injunction to end these practices, an award to Plaintiff and Class members of statutory and exemplary damages for each illegal email, and an award of attorneys' fees and costs.

## II.    PARTIES

7.      Plaintiff is a resident of the state of Maryland, residing in the City of Baltimore, Maryland.

8.      Defendant True Religion Apparel, Inc. is a California corporation with its principal place of business at 500 W 190th St., #300, Gardena, California. True Religion engages in substantial business activities in Maryland, including by selling and delivering products to

2

Maryland consumers from its website, maintaining a brick-and-mortar store in Maryland, and sending the marketing emails at issue in this Complaint to consumers throughout Maryland.

9. True Religion Sales, LLC is a subsidiary of True Religion Apparel, Inc. and is registered to do business in Maryland.

### III.   JURISDICTION AND VENUE

10. The Court has jurisdiction under Md. Code Ann., Cts & Jud. Proc. § 1-501.

11. This Court has personal jurisdiction over Defendants pursuant to Md. Code Ann., Cts. & Jud. Proc. § 6-103. Defendants conduct business in Maryland through their purposeful transmission of electronic mail messages to consumers within the State of Maryland. In addition, Defendants operate a store in the state of Maryland, and the case arises, in part, out of a transaction that took place within Maryland, and Defendants contract to supply goods or services in Maryland.

12. Venue is proper in this Court under both Md. Code Ann., Cts. & Jud. Proc. §§ 6-201, and 6-202, because while the Defendants do not have a principal place of business in this State, they do conduct regular business in their brick-and-mortar location in Maryland. True Religion Sales, LLC is registered to do business in the State of Maryland and has a registered agent for service of process with the State Department of Assessments and Taxation in this City. Additionally, Plaintiff resides in Baltimore.

### IV.   LEGAL FRAMEWORK

13. Maryland's Commercial Electronic Mail Act ("MCEMA") regulates deceptive email marketing.

14. MCEMA prohibits sending an email advertisement to a Maryland resident that "[c]ontains false or misleading information the subject line that has the capacity, tendency or effect of deceiving the recipient." MCEMA §14-3002(b).

15.     MCEMA was passed to curb the dissemination of false or misleading information through commercial email, as a deceptive business practice.

16.     An injury occurs under MCEMA anytime a commercial email is transmitted that contains false or misleading information in the subject line.

17.     Under MCEMA, it is irrelevant whether misleading commercial emails were solicited.

18.     MCEMA creates a private right of action for people who receive commercial emails with subject lines containing false or misleading information that has the capacity, tendency, or effect of deceiving the recipient. §14-3003.

## V.     FACTUAL ALLEGATIONS

**A.     Defendants initiate (or conspire to initiate) the transmission of commercial emails with false or misleading subject lines.**

19.     Defendants have initiated (or conspired with their marketing companies to initiate) the transmission of dozens of commercial electronic mail messages with false or misleading subject lines to Plaintiff and the Class. The emails were electronic mail messages, in that they were each an electronic message sent to an electronic mail address; the emails from Defendants also referred to an internet domain, whether or not displayed, to which an electronic mail message can or could be sent or delivered.

20.     Defendants sent the emails for the purpose of promoting their goods for sale.

21.     The emails were sent at Defendants' direction and were approved by Defendants.

22.     Defendants use sales that are purportedly limited in nature to send more emails to consumers than they otherwise might. Defendants commonly send three marketing emails every day, and sometimes send up to *five per day*, many of them advertising sales that are purportedly

ending or being extended. For example, Defendants will send emails (i) when a limited time sale starts, (ii) while the sale is ongoing, (iii) when the sale is close to ending, (iv) when the sale is (purportedly) in its final hours, and (v) when the sale has been "extended" or renewed. When several emails contain the same false and misleading information, the emails clog up inboxes with spam and waste limited data space.

23.    Defendants violate MCEMA because many of the statements in the email subject lines that are intended to seduce consumers into opening the email and/or making a purchase are false and misleading on several fronts. There are numerous examples of Defendants' emails that can be shown to have false and misleading information in the subject lines. While there are too many examples to include them all here, the facts alleged below show the types of false and misleading email subject lines Defendants routinely deploy.

**1.    Defendants sent emails with a subject line stating that a sale or promotional price is ending when it is not**.

24.    Defendants' email subject lines frequently advertise the limited nature of sales and discounts, when in fact the sales do not end when stated or the same discounts continue to be offered after the purported sale ends.

25.    Research has shown that emails that convey a sense of urgency in email subject lines (e.g., "Last Chance," "Time Is Running Out"), have higher open rates than emails without such subject lines.[1] By stating that a sale is only on for a limited time or that it is the sale's "last

---

[1] *See* The Ultimate 2023 Email Marketing Stats List, https://codecrew.us/email-marketing-stats-you-need-to-know-the-ultimate-list/ ("subject lines with a sense of urgency (BUY NOW, HURRY) have a 22% open rate. That's quite a bit higher than normal.") (last accessed January 13, 2026); Urgency Emails: An All-Inclusive Guide For Marketers To Drive Maximum Conversions, https://email.uplers.com/blog/complete-guide-to-urgency-emails/ (last accessed January 13, 2026).

call," Defendants suggest an offer's rarity or urgency, stimulating consumers' desire to get the deal before it is gone while simultaneously inducing fear of missing a good buy. But the urgency conveyed by Defendants' email subject lines is false, and thus consumers are being seduced into opening emails that they would have deleted or ignored if the subject lines had been truthful.

26. The potential for such statements to be false and misleading has also been recognized by the Federal Trade Commission, which directs that sellers should not "make a 'limited' offer which, in fact, is not limited." 16 C.F.R. § 233.5.

27. Consider, as an example, the below chain of emails sent by Defendants:

| DATE | EMAIL SUBJECT LINE |
| --- | --- |
| 8/18/2025 | 2-DAYS ONLY !! Styles Start @ $14.99 |
| 8/18/2025 | TIME'S TICKING For $14.99 STYLES ⏳ |
| 8/19/2025 | $14.99 Styles End at MIDNIGHT ⏰ |
| 8/19/2025 | FINAL HOURS !! $14.99 STYLES |
| 8/20/2025 | EXTENDED 🤑 Styles as LOW as $14.99 |
| 8/20/2025 | FLASH SALE EXTENDED: TODAY ONLY !! |
| 8/20/2025 | $14.99 STYLES ENDS TONIGHT ⏰ |

28. The subject line of the email Defendants sent on August 18, 2025, advertising "2-DAYS ONLY !! Styles Start @ $14.99" and the emails Defendants sent on August 19, 2025, advertising "$14.99 Styles End at MIDNIGHT ⏰ " and "FINAL HOURS !! $14.99 STYLES," are false and misleading because the sale lasted until at least August 20, 2025.

6

**2.     Defendants send emails advertising in subject lines that a sale is "extended," but Defendants always planned to continue the sale during the purported "extension."**

29.     Defendants further misrepresent how long it is offering a sale by sending emails with subject lines stating that a sale has been "extended." Defendants often send these emails during or following long holiday weekends.

30.     However, discovery will show that Defendants' employees did not gather at the end of the planned sale and determine that the sale should be extended.

31.     Instead, the sale was always planned to continue, and the advertised "extension" is fake.

32.     For example, True Religion "extended" its 70% off sale in 2025.

33.     Specifically, on July 1, 2025, Defendants sent emails with subject lines advertising "SUMMER  SAVINGS 🌞 70% OFF" and "All your faves. 70% OFF. It's go time →."

34.     From July 1, 2025, to July 5, 2025, True Religion sent seven emails advertising its 70% off sale with email subject lines such as "Shop 70% Off EVERYTHING* 💉 ."

35.     On July 4, 2025, True Religion sent two emails warning that the 70% off sale was ending with the following email subject lines: "FINAL HOURS 🚨 70% Off* + VIP Extra 25% Off!" and "Time is ticking! ⏰ 70% OFF DENIM*!"

36.     However, on July 5, 2025, after the sale was supposed to have ended, True Religion sent an email advertising "EXTENDED 🤩 70% Off* + EXTRA 25% Off!."

37.     True Religion's July 4, 2025 email subject lines are false and misleading because True Religion did not intend to end the sale on July 4, 2025, and planned for it to be offered until at least July 5, 2025.

38.     The subject line of the July 5, 2025, email is also false and misleading because True Religion planned to continue the sale that day and it was not an "extension."

**3.   Defendants send emails with subject lines advertising "early access" to sales when the date is simply the planned start of a sale that everyone has access to.**

39.     Defendants not only send emails with subject lines mispresenting when sales will end—it also sends emails with subject lines mispresenting the start of the sales, by sending emails stating that it is offering "early access" to a sale. But there is nothing "early" about Defendants' "early access" sales. Discovery will show that the "early" access was offered to all consumers receiving Defendants' emails and that Defendants always planned to start the sale for everyone on that date.

40.     For example, on March 17, 2025, Defendants sent Plaintiff an email stating in the email subject line "60% OFF EARLY ACCESS 💸 ENDS AT MIDNIGHT."

41.     On July 1, 2025, Defendants sent Plaintiff an email stating in the email subject line "GET 1-DAY EARLY ACCESS 🔒 "

42.     The subject lines of the emails identified above advertising "Early access" were false and misleading because there was nothing "early about the sale being offered those days- it was offered to all email recipients and was always scheduled to start that day.

**B.     Defendants Send Commercial Emails to Consumers Whom They Know, Or Have Reason to Know, Reside In Maryland.**

43.     Defendants sent the misleading commercial emails to email addresses that Defendants knew, or had reason to know, belonged to Maryland residents, either because (i) Defendants send a large volume of email nationwide and should know that they are sending emails to Maryland residents; (ii) Defendants had a physical Maryland address that was associated with

the recipient; (iii) Defendants had access to data or could access data regarding the recipient indicating that they were in Maryland; or (iv) information was available to Defendants upon request from the registrant of the internet domain name contained in the recipient's electronic mail address.

44.    First, for any person that orders products from Defendants, Defendants associate that person with a billing address and shipping address.

45.    Second, Defendants offer consumers financing options with certain financial partners. Consumers who apply or sign up for such financing must provide additional identifying information, such as an address to Defendants.

46.    Third, discovery will show that Defendants employ methods to track the effectiveness of their marketing emails and to identify consumers that click on links contained in Defendants' social medial advertising and marketing emails, including by identifying their physical location. For example, discovery will also show that Defendants gather information such as geocoordinates and IP addresses from individuals who click on links in Defendants' commercial emails, and that Defendants can use such information to determine whether the recipient is in Maryland.

47.    Fourth, Defendants also utilize cookies, pixels, and other online tracking technologies to identify and locate the consumers that click on links contained in Defendants' marketing emails and that visit their website. For example, Defendants have installed the Meta Pixel on their website, which identifies website visitors and can identify specific Facebook and Instagram users that visit Defendants' website—information that can be associated with the data collected by Meta on where consumers reside. Defendants also employ tracking technologies

provided by other companies, such as Google, Inc., that may be able to locate consumers in the state of Maryland.

48.    Fifth, Defendants could obtain data from marketing companies regarding the geographic locations of the individuals to whom they send marketing emails.

49.    Lastly, Defendants also knew, should have known, or had reason to know that they send marketing emails to Maryland residents due to their presence in the State and the volume of marketing emails they send to people around the country.

50.    Discovery will show that, at the time they sent the emails with false and misleading subject lines, Defendants had access to or could have accessed the data described above regarding the location of consumers in Maryland to whom they sent the emails.

**C.    Defendants initiated (or conspired to initiate) the transmission of illegal emails to Plaintiff.**

51.    At all times relevant to this Complaint, Plaintiff resided in the State of Maryland.

52.    Plaintiff receives emails from Defendants at a Yahoo email address. Plaintiff has received dozens of emails from Defendants since 2025.

53.    Defendants know, or have reason to know, that Plaintiff's email address is held by a Maryland resident. Plaintiff has visited Defendants' website from her electronic devices located in Maryland and has clicked on links contained in Defendants' emails on her phone while in Maryland, and from her computer, which was registered to an IP address in Maryland at all relevant times.

54.    Plaintiff received the True Religion emails sent by Defendants that are identified in this Complaint.

55. Defendants sent emails with false and misleading subject lines to Plaintiff for the purpose of promoting Defendants' goods for sale.

56. Defendants initiated the transmission or conspired to initiate the transmission of these commercial electronic mail messages to Plaintiff.

57. Plaintiff does not want to receive emails with false and misleading subject lines from Defendants, though she would like to continue receiving truthful information from Defendants regarding True Religion products. However, due to Defendants' conduct, Plaintiff cannot tell based on Defendants' email subject lines, many of which are false or misleading, which of Defendants' emails she actually wants to open.

## VI.   CLASS ACTION ALLEGATIONS

58. <u>Class Definition</u>. Plaintiff brings this case as a class action under Civil Rule 23(b)(3), on behalf of a Class defined as:

> All persons who, within the statute of limitations and while a Maryland resident, received an email from or at the behest of Defendants that contained a subject line stating that (1) a sale, discount, price, or other offer is being extended, when Defendants planned to offer the sale, discount, price, or other offer through the extension period advertised; (2) a sale, discount, price, or other offer is ending on a stated date when Defendants continued to offer the sale, discount, price or other offer for a longer period of time; (3) the consumer is being granted "early" access, but in fact the sale was accessible to everyone at the same time.

Excluded from the Class are Defendants, any entity in which Defendants have a controlling interest or that has a controlling interest in Defendants, and Defendants' legal representatives, assignees, and successors. Also excluded are the judge to whom this case is assigned and any member of the judge's immediate family.

11

59.     Numerosity. The Class is so numerous that joinder of all members is impracticable. The Class has more than 100 members. Moreover, the disposition of the claims of the Class in a single action will provide substantial benefits to all parties and the Court.

60.     Commonality. There are numerous questions of law and fact common to Plaintiff and members of the Class. The common questions of law and fact include, but are not limited to:

a.     Whether Defendants sent commercial electronic mail messages with false and misleading information in the subject lines;

b.     Whether Defendants initiated the transmission or conspired to initiate the transmission of commercial electronic mail messages to recipients residing in Maryland State in violation of MCEMA §14-3002(b);

c.     Whether Plaintiff and the proposed Class are entitled to an injunction enjoining Defendants from sending the unlawful emails in the future; and

d.     The nature and extent of Class-wide injury and damages.

61.     Typicality. Plaintiff's claims are typical of the claims of the Class. Plaintiff's claims, like the claims of the Class arise out of the same common course of conduct by Defendants and are based on the same legal and remedial theories.

62.     Adequacy. Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has retained competent and capable attorneys with significant experience in complex and class action litigation, including consumer class actions and class actions involving violations of MCEMA. Plaintiff and her counsel are committed to prosecuting this action vigorously on behalf of the Class and have the financial resources to do so. Neither Plaintiff nor her counsel have interests that are contrary to or that conflict with those of the proposed Class.

63.    Predominance. Defendants have a standard practice of initiating or conspiring to initiate commercial electronic mail messages to email addresses of Maryland residents. The common issues arising from this conduct predominate over any individual issues. Adjudication of these issues in a single action has important and desirable advantages of judicial economy.

64.    Superiority. Plaintiff and members of the Class have been injured by Defendants' unlawful conduct. Absent a class action, however, most Class members likely would find the cost of litigating their claims prohibitive. Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities. The members of the Class are readily identifiable from Defendants' records and there will be no significant difficulty in the management of this case as a class action.

65.    Injunctive Relief. Defendants' conduct is uniform as to all members of the Class. Defendants have acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or declaratory relief is appropriate with respect to the Class as a whole. Plaintiff further alleges, on information and belief, that the emails described in this Complaint are substantially likely to continue in the future if an injunction is not entered.

## VII.    CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF

**(Violations of Maryland's Commercial Electronic Mail Act, §14-3001, *et seq*.)**

66.    Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

67.    MCEMA defines "Commercial Electronic Mail" as "electronic mail that advertises real property, goods, services for sale or lease."

68.     The emails sent by Defendants are "Commercial Electronic Mail" because they advertise True Religion goods for sale.

69.     MCEMA provides that "A person may not initiate the transmission, conspire with another person to initiate the transmission, or assist in the transmission of commercial electronic mail that is from a computer in the State or is sent to an electronic mail address that the sender knows or should have is held by a resident of the State; and contains false or misleading information in the subject lines that has the capacity, tendency, or effect or deceiving the recipient." §14-3002(b).

70.     Defendants initiated the transmission or conspired to initiate the transmission of one or more commercial electronic mail messages to Plaintiff and proposed Class members with false or misleading information in the subject line.

71.     Defendants' acts and omissions violated MCEMA §14-3002(b).

72.     Defendants' acts and omissions injured Plaintiff and proposed Class members.

## SECOND CLAIM FOR RELIEF

### (Injunctive Relief)

73.     Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

74.     Defendants are required to abide by MCEMA when sending commercial electronic mail.

75.     Defendants continue to violate MCEMA by sending out false and misleading commercial electronic mail.

76.     The balance of the equities favors the entry of permanent injunctive relief against Defendants. Plaintiff, the members of the Class and the general public will be irreparably harmed

14

absent the entry of permanent injunctive relief against Defendants. A permanent injunction against Defendants is in the public interest. Defendants' unlawful behavior is, based on information and belief, ongoing as of the date of the filing of this pleading. Absent the entry of a permanent injunction, Defendants' unlawful behavior will not cease and, in the unlikely event that it voluntarily ceases, is likely to reoccur.

77.     Plaintiff and Class members are therefore entitled to injunctive relief in the form of an order enjoining further violations of MCEMA §14-3002(b).

## VIII.   REQUEST FOR RELIEF

WHEREFORE, Plaintiff, on her own behalf and on behalf of the members of the Class, requests judgment against Defendants as follows:

A.     That the Court certify the proposed Class;

B.     That the Court appoint Plaintiff as Class Representative.

C.     That the Court appoint the undersigned counsel as counsel for the Class;

D.     That the Court should grant declaratory, equitable, and/or injunctive relief as permitted by law to ensure that Defendants will not continue to engage in the unlawful conduct described in this Complaint;

E.     That the Court enter a judgment awarding any other injunctive relief necessary to ensure Defendants' compliance with the MCEMA;

F.     That Defendants be immediately restrained from altering, deleting or destroying any documents or records that could be used to identify members of the Class;

G.     That Plaintiff and all Class members be awarded statutory damages in the amount of $500 for each violation of the MCEMA;

H.      That the Court enter an order awarding Plaintiff's reasonable attorneys' fees and costs pursuant to MCEMA §14-3003; and

I.      That Plaintiff and all Class members be granted other relief as is just and equitable under the circumstances.

## IX.    TRIAL BY JURY

Plaintiff demands a trial by jury for all issues so triable.

Date: January 29, 2026                      BERGER MONTAGUE PC

By: /s/F. Paul Bland, Jr.
    F. Paul Bland, Jr., AIS No.9106200015
    1001 G. Street, NW, 4th Floor Suite 400 East
    Washington, DC 20001
    Telephone: (202) 809-9136
    pbland@bergermontague.com

    *Attorneys for Plaintiff*