## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

CAMILLE LaTOUCHE,                          *

    *Plaintiff*,                                *

    v.                                        *     Civil Action No. RDB-26-914

TRUE RELIGION APPAREL, INC. *et al.*,      *

    *Defendants*.                             *

\*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*

## <u>MEMORANDUM ORDER</u>

In this putative class action, Plaintiff Camille LaTouche ("Plaintiff" or "Ms. LaTouche") alleges that Defendants True Religion Apparel, Inc. and True Religion Sales, LLC (collectively, "Defendants" or "True Religion"), sent her and putative class members excessive and deceptive marketing emails in violation of Maryland law. *See* (ECF No. 1-1).[1] This action is among a group of nearly identical cases filed in this Court.[2]

Ms. LaTouche initiated this action on January 29, 2026, by filing in the Circuit Court for Baltimore City, Maryland a two-Count Complaint, alleging against Defendants: (1) Violations of Maryland's Commercial Electronic Mail Act ("MCEMA"), MD. CODE ANN., COM. LAW §§ 14-3001 *et seq.* (Count I); and (2) Injunctive Relief (Count II). (ECF No. 1-1.) In

---

[1] Plaintiff's Complaint appears on the docket at both ECF No. 1-1 and ECF No. 2. For clarity and consistency, the Court cites to the Complaint only at ECF No. 1-1.

[2] In addition to *Crooks v. Coty DTC Holdings, LLC*, Civ. No. RDB-26-0078, 2026 WL 1265422 (D. Md. May 8, 2026), filed before the undersigned, the following cases presenting essentially identical issues have appeared before judges in this district: *Carter v. Vineyard Vines, LLC*, Civ. No. ELH-25-3178, 2026 WL 1429258 (D. Md. May 21, 2026); *Smith v. Lane Bryant Brands Opco LLC*, Civ. No. SAG-25-3766, 2026 WL 1745684 (D. Md. Jun. 17, 2026); *Mulanena v. Ulta Salon, Cosms. & Fragrance, Inc.*, Civ. No. JRR-25-3753, 2026 WL 1214932 (D. Md. May 4, 2026).

addition to injunctive relief, she seeks statutory damages of $500 per violation of MCEMA, exemplary damages per violation, and attorneys' fees and costs. (*Id.* ¶ 6, at 16–17.) On March 4, 2026, Defendants removed the action to this Court based on diversity jurisdiction.[3] (ECF No. 1.)

Presently pending before the Court is True Religion's Motion to Dismiss for Failure to State a Claim ("Defendants' Motion" or "Motion to Dismiss") (ECF No. 15), in which it argues that Plaintiff has not alleged facts sufficient to state a claim for relief under Federal Rules of Civil Procedure 12(b)(6) and 9(b). Plaintiff has responded in Opposition (ECF No. 24) to Defendants' arguments for dismissal. Although the parties originally addressed only the substantive claims, Plaintiff has since filed Notices (ECF No. 30; ECF No. 36) of three recent decisions in which this Court determined that similar MCEMA plaintiffs, alleging deceptive and excessive marketing emails, lacked a concrete injury for purposes of Article III standing. Defendants filed a Reply ("First Reply") (ECF No. 33) addressing the substantive claims[4] before filing an Updated Reply ("Updated Reply") (ECF No. 35), as to standing. The parties' submissions have been reviewed, and no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). Whether a plaintiff has established Article III standing is a threshold jurisdictional issue that this Court must resolve before reaching the merits of a dispute. *E.g.*, *Murthy v. Missouri*, 603

---

[3] This Court has diversity jurisdiction of this matter under 28 U.S.C. § 1332 and under the Class Action Fairness Act ("CAFA"), *id.* § 1332(d), which authorizes diversity jurisdiction in matters in which there are at least 100 members in the putative class, the amount in controversy exceeds $5 million, and at least one plaintiff is diverse from at least one defendant. *See* (ECF No. 1 at 1 (assertion diversity jurisdiction)).

[4] In their First Reply (ECF No. 33), Defendants suggest that Plaintiff's Notices of Supplemental Authority (ECF No. 30; ECF No. 36) are improper because Plaintiff raised jurisdictional issues of standing as new arguments therein. *See* (ECF No. 33 at 15 n.7). However, "it is well established that the court has an independent obligation to assure that standing exists, regardless of whether it is challenged by any of the parties." *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009) (citation omitted).

U.S. 43, 56 (2024). For the reasons set forth below, Plaintiff lacks Article III standing such that this Court lacks subject matter jurisdiction. This case, including Defendants' pending Motion to Dismiss (ECF No. 15), must be REMANDED to the Circuit Court for Baltimore City, Maryland.

## BACKGROUND

Plaintiff's claims relate to True Religion's alleged marketing practices. She alleges that True Religion sends marketing "emails with false and misleading subject lines to create the illusion of a good deal and impart a sense of urgency and induce fear in consumers that they might miss out on that good deal, spurring consumers to make purchases in a hurry . . . ." (*Id.* ¶ 2.) Specifically, she alleges that:

> Defendants commonly send three marketing emails every day, and sometimes send up to *five per day*, many of them advertising sales that are purportedly ending or being extended. For example, Defendants will send emails (i) when a limited time sale starts, (ii) while the sale is ongoing, (iii) when the sale is close to ending, (iv) when the sale is (purportedly) in its final hours, and (v) when the sale has been "extended" or renewed.

(*Id.* ¶ 22.) According to Plaintiff, these numerous "emails clog up inboxes with spam and waste limited data space." (*Id.*) She alleges that the emails included repeated and intentional misrepresentations as part of Defendants' planned marketing strategy.

Plaintiff alleges that such repetitive, deceptive emails violate the Maryland Commercial Electronic Mail Act ("MCEMA"), MD. CODE ANN., COM. LAW §§ 14-3001 *et seq.* (Count I). *See generally* (ECF No. 1-1 ¶¶ 1–72.) Under MCEMA, a person may not send, conspire to send, or assist another in sending commercial electronic mail[5] into or out of Maryland that contains

---

[5] "[C]ommercial electronic mail" is "electronic mail that advertises real property, goods, or services for sale or lease." *Id.* § 14-3001(b)(1).

3

"false or misleading information in the subject line that has the capacity, tendency, or effect of deceiving the recipient." MD. CODE ANN., COM. LAW § 14-3002(b). MCEMA authorizes statutory damages of $500 per violation. *See id.* § 14-3003. Notably, although Plaintiff alleges violations of MCEMA, she "does not allege that True Religion's emails were unsolicited . . . [or] that she relied on any misstatement in the email subject lines . . . ." (ECF No. 30 at 1); *see generally* (ECF No. 1-1). Rather, she alleges that she wants to continue receiving marketing emails from Defendants, provided the emails are truthful. (ECF No. 1-1 ¶ 57.) She does not seek actual damages but instead requests statutory and exemplary damages, reasonable attorneys' fees and costs, and injunctive relief. (*Id.* ¶¶ 6, at 16–17.)

On January 29, 2026, Plaintiff filed this putative class action in the Circuit Court for Baltimore City, Maryland. (ECF No. 1-1.) In her two-Count Complaint, she seeks statutory and exemplary damages based on alleged MCEMA violations (Count I) and injunctive relief to prevent future violations of the MCEMA (Count II). (*Id.*) On March 4, 2026, Defendants removed this action to this Court, asserting jurisdiction based on both complete diversity of the parties and minimal diversity under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d), 1453(b).[6] (ECF No. 1.) Defendants then filed a Motion to Dismiss Plaintiff's Complaint for Failure to State a Claim under Federal Rules of Civil Procedure 12(b)(6) and 9(b). (ECF No. 15.) Plaintiff responded in Opposition on May 1, 2026. (ECF No. 24.) She then filed a Notice of Supplemental Authority suggesting that she lacks Article III

---

[6] As noted above, CAFA authorizes diversity jurisdiction in putative class actions in which (1) the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs, (2) any member of a class of plaintiffs is a citizen of a State different from any defendant (known as "minimal diversity"), and (3) the number of all members of all proposed plaintiff classes aggregates to one hundred or more. 28 U.S.C. § 1332(d).

4

standing because she has not alleged a concrete injury, and True Religion thus has not met its burden to establish jurisdiction for removal. (ECF No. 30 at 1.) Notably, however, she has not filed a formal motion to remand. Thereafter, Defendants filed a First Reply (ECF No. 33), addressing their original arguments under Rules 12(b)(6) and 9(b), and an Updated Reply (ECF No. 35), contending that Plaintiff has Article III standing. Plaintiff then filed a second Notice of Supplemental Authority as to standing. (ECF No. 36.) This matter is now ripe for review.

## STANDARD OF REVIEW[7]

A defendant may remove any state civil case to federal court if the plaintiff could have originally brought the case in federal court. 28 U.S.C. § 1441(a); *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 7–8 (1983). Thus, for removal to be proper, the federal court must have original jurisdiction over the case despite it being filed in state court. If a case was "not properly removed, because it was not within the original jurisdiction of the United States district courts, the district court must remand it to the state court from which it was removed." *Franchise Tax Bd.*, 463 U.S. at 8 (citing 28 U.S.C. § 1447(c)). A defendant who removes a case bears the burden of establishing both that the federal court has jurisdiction and that the removal is procedurally correct. *Pressl v. Appalachian Power Co.*, 842 F.3d 299, 302 (4th Cir. 2016) (citing *Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 816 (4th Cir. 2004)); *see also* 28 U.S.C. § 1446 (removal procedures).

---

[7] As explained below, because this Court lacks subject matter jurisdiction, it does not reach Defendant's Motion to Dismiss under Rules 12(b)(6) and 9(b), which shall remain pending upon remand to the Circuit Court for Baltimore City, Maryland.

## ANALYSIS

Although Defendants seek to dismiss Plaintiff's claims as insufficiently alleged pursuant to the pleading standards set forth in Federal Rules of Civil Procedure 12(b)(6) and 9(b), this case presents a threshold question of Article III standing. As the U.S. Court of Appeals for the Fourth Circuit has recently reiterated, "[w]here standing is in question, the federal court must decide the issue before reaching the merits of any claim presented" because Article III standing is a jurisdictional prerequisite to adjudication. *Pub. Int. Legal Found., Inc. v. Wooten*, 164 F.4th 362, 365 (4th Cir. 2026) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998)). As the Supreme Court has repeatedly emphasized, "Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Murthy v. Missouri*, 603 U.S. 43, 56 (2024); *see* U.S. Const. art. III, § 2, cl. 1. "The requirement that a [p]laintiff possess 'standing to sue' emanates from that constitutional provision." *Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc.*, 892 F.3d 613, 619 n.5 (4th Cir. 2018). As particularly relevant to Ms. LaTouche's claims in this case, the Fourth Circuit has specifically held that "plaintiffs cannot establish a cognizable injury simply by pleading a statutory violation." *Garey v. James S. Farrin, P.C.*, 35 F.4th 917, 921 (4th Cir. 2022); *see also O'Leary v. TrustedID, Inc.*, 60 F.4th 240, 243 (4th Cir. 2023) ("The intangible harm of enduring a statutory violation, standing alone, typically won't suffice under Article III—unless there's separate harm (or a materially increased risk of another harm) associated with the violation.").

"A proper case or controversy exists only when [the] plaintiff 'establish[es] that [she] ha[s] standing to sue.'" *Murthy*, 603 U.S. at 57 (alterations in original) (quoting *Raines v. Byrd*, 521 U.S. 811, 820 (1997)); *accord Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559 (1992). Such

6

standing ensures that a plaintiff has "a 'personal stake' in the case." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (quoting *Raines*, 521 U.S. at 819). Article III standing exists where (1) the plaintiff "suffered an injury in fact that is concrete, particularized, and actual or imminent;" (2) "the injury was likely caused by the defendant;" and (3) "the injury would likely be redressed by judicial relief." *Id.* (citing *Lujan*, 504 U.S. at 560–61). The burden to establish standing lies with the party invoking federal jurisdiction—here, True Religion. *Lujan*, 504 U.S. at 561.

At the pleading stage, "the court determines whether the allegations in the Complaint, taken as true, are sufficient to establish standing under the plausibility standard of Rule 12(b)(6) and *Iqbal/Twombly*." *Evans v. Am. Collection Enter.*, 624 F. Supp. 3d 593, 598 (D. Md. 2022) (quoting *Allah-Mensah v. Law Off. of Patrick M. Connelly, P.C.*, Civ. No. PX-16-1053, 2016 WL 6803775, at *2 (D. Md. Nov. 17, 2016)). If a federal court determines that it lacks subject matter jurisdiction over a case that has been removed from state court, the case must be remanded to state court. 28 U.S.C. § 1447(c); *Wells v. Johnson*, 150 F.4th 289, 308 (4th Cir. 2025). Thus, although Plaintiff has not filed a motion to remand this matter, this Court must remand this case if Plaintiff lacks the jurisdictional prerequisite of Article III standing. After all, "[f]ederal courts have an independent duty to confirm their own jurisdiction even when, as here, it initially went unquestioned by the parties." *Shaiban v. Jaddou*, 97 F.4th 263, 265 (4th Cir. 2024) (citing *Va. Dep't of Corr. v. Jordan*, 921 F.3d 180, 187 (4th Cir. 2019)).

In this case, Article III standing hinges on whether Plaintiff has alleged an injury in fact that is sufficiently concrete. "A plaintiff can show an 'injury in fact' when [she] suffers 'an invasion of a legally protected interest which is concrete and particularized, as well as actual

or imminent.'" *Piney Run Preservation Ass'n v. Cnty. Comm'rs of Carroll Cnty.*, 268 F.3d 255, 263 (4th Cir. 2001) (quoting *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 154 (4th Cir. 2000)); *accord Lujan*, 504 U.S. at 560–61. Crucially, "Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016). "[A]n injury in law is not an injury in fact," *TransUnion*, 594 U.S. at 427, and a statutory injury does not inherently confer an injury in fact. *See, e.g.*, *Garey*, 35 F.4th at 921. Instead, a plaintiff alleging a statutory violation has an Article III injury where she can show that she has been "*concretely harmed* by a defendant's statutory violation." *TransUnion*, 594 U.S. at 427.

"An injury is concrete if it is 'de facto'—that is, if it 'actually exist[s].'" *Baehr v. Creig Northrop Team, P.C.*, 953 F.3d 244, 252 (4th Cir. 2020) (quoting *Spokeo*, 578 U.S. at 340). "Concrete injuries are not, however, limited to those injuries that result in tangible harm." *Id.* (citing *Spokeo*, 578 U.S. at 341–42). A plaintiff alleging intangible harm "under a statutory cause of action can establish a cognizable injury by 'identif[ying] a close historical or common-law analogue for their asserted injury' for which courts have 'traditionally' provided a remedy." *Garey*, 35 F.4th at 921 (alteration in original) (quoting *TransUnion*, 594 U.S. at 425). Here, Ms. LaTouche alleges her claims pursuant to the statutory cause of action provided in the Maryland Commercial Electronic Mail Act ("MCEMA"). As explained below, her alleged intangible harms are not sufficiently concrete so as to constitute an injury in fact cognizable under Article III. As such, Plaintiff lacks Article III standing and this case must be remanded.

Plaintiff alleges that Defendants frequently send her and other members of the putative class between three to five emails with deceptive subject lines each day. (ECF No. 1-1 ¶ 22.)

8

Specifically, she alleges that the emails' subject lines included phrases such as "FINAL HOURS," "TIME'S TICKING," "FLASH SALE EXTENDED," "EARLY ACCESS," "2-DAYS ONLY," and that a sale would "END[] TONIGHT" or "END[] AT MIDNIGHT." (*Id.* ¶¶ 27–28, 32–36, 40–41.) According to Plaintiff, however, "the sale[s] w[ere] always planned to continue, . . . the advertised 'extension[s]' [were] fake," "the 'early' access was offered to all consumers receiving Defendants' emails[,] and . . . Defendants always planned to start the sale for everyone on that date." (*Id.* ¶¶ 30–31, 39); *see also* (*id.* ¶¶ 1, 38, 42). Notably, Plaintiff does *not* allege that (1) she did not want the emails; (2) she relied to her detriment on any of the allegedly false subject lines such that she made or almost made a purchase she would not have otherwise made; or (3) she spent any significant amount of time reviewing or deleting the emails. *See* (ECF No. 1-1; ECF No. 30 at 1). Rather, she alleges that these emails violate MCEMA because they "create the illusion of a good deal and impart a sense of urgency" to encourage impulsive purchases. (*Id.* ¶¶ 2, 25.)

The question of whether violations of MCEMA creates a cognizable injury for purposes of Article III standing has arisen recently in this Court. *See Crooks v. Coty DTC Holdings, LLC*, Civ. No. RDB-26-0078, 2026 WL 1265422 (D. Md. May 8, 2026); *see also Carter v. Vineyard Vines, LLC*, Civ. No. ELH-25-3178, 2026 WL 1429258 (D. Md. May 21, 2026); *Smith v. Lane Bryant Brands Opco LLC*, Civ. No. SAG-25-3766, 2026 WL 1745684 (D. Md. Jun. 17, 2026); *Mulanena v. Ulta Salon, Cosms. & Fragrance, Inc.*, Civ. No. JRR-25-3753, 2026 WL 1214932 (D. Md. May 4, 2026). Most relevantly, in *Carter v. Vineyard Vines, LLC*, Civ. No. ELH-25-3178, 2026 WL 1429258 (D. Md. May 21, 2026), Judge Hollander of this Court considered facts nearly identical to those at issue in this case. *Compare id.* at *28, *and Smith*, 2026

9

WL 1745684, at *1, *with* (ECF No. 1-1 ¶¶ 25, 27–28, 30–39, 42). Tellingly, Judge Hollander concluded that receipt of emails that "create a false sense of urgency and stimulate consumers to make purchases" does not constitute an injury in fact for purposes of Article III standing. *Carter*, 2026 WL 1429258, at *28, *30. Indeed, where, as here, a plaintiff in briefing or in a complaint disclaims any injury beyond mere receipt of emails that allegedly violate MCEMA, this Court has repeatedly determined that the plaintiff lacks Article III standing. *See Carter*, 2026 WL 1429258, at *1, *12–14, *17, *23–28; *Crooks*, 2026 WL 1265422, at *5–6; *Mulanena*, 2026 WL 1214932, at *6–7; *Asabre v. Retail Servs. & Sys., Inc.*, Civ. No. PWG-22-148, 2022 WL 4326536, at *2 (D. Md. Sep. 19, 2022); (ECF No. 30 at 1 (disclaiming additional injury).

Nonetheless, Defendants contend that Plaintiff's "injuries . . . closely resemble harms addressed by the longstanding common law torts of fraud, nuisance, and invasion of privacy."[8] (ECF No. 35 at 18). Alternatively, Defendants argue that Plaintiff has alleged a concrete injury in the form of harassment and annoyance. (*Id.* at 18–19, 22.) Finally, they assert that Plaintiff's request for injunctive relief supports Article III standing. (*Id.* at 19, 22.) Significantly, however,

---

[8] Defendants cite cases from federal district courts in Washington and California that found Article III standing from similar allegations of voluminous emails with deceptive subject lines. *See* (ECF No. 35 at 18–22 (first citing *Harbers v. Eddie Bauer, LLC*, 415 F. Supp. 3d 999 (W.D. Wash. 2019); then citing *Liss v. Skechers USA Inc.*, No. 3:25-cv-5861, 2026 WL 1392327 (W.D. Wash. May 19, 2026); then citing *Brinton v. Vivint Inc.*, No. 3:23-cv-6105, 2024 WL 3688589 (W.D. Wash. Aug. 7, 2024); then citing *Nuri v. True Religion Apparel*, No. 2:25-cv-690, 2026 WL 864886 (W.D. Wash. Mar. 30, 2026); then citing *Whittaker v. Tactical USA LLC*, No. 2:23-cv-2914, 2024 WL 1855645 (E.D. Cal. Apr. 29, 2024); then citing *Lynch v. AML Network Ltd.*, No. 21-cv-3574, 2021 WL 4453470 (C.D. Cal. Sep. 27, 2021); then citing *Diaz v. OneTechs., LLC*, No. 21-cv-8571, 2022 WL 72283 (C.D. Cal. Jan. 6, 2022); then citing *Chin v. Evergreen Freedom Found.*, 764 F. Supp. 3d 924 (C.D. Cal. 2025); and then citing *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024 (S.D. Cal. 2023).) Courts in the Ninth Circuit have not reached consistent results, and Defendants candidly admit that "[t]he Ninth Circuit is presently considering an appeal from a ruling by a district court in Washington, finding that alleged violations of Washington CEMA did not confer Article III standing." (*Id.* at 21 n.7 (first citing *Montes v. Catalyst Brands LLC*, No. 2:25-cv-281, 2025 WL 3485827 (E.D. Wash. Dec. 4, 2025); and then citing *Montes v. Penny OpCo, LLC et al.*, No. 25-8045 (9th Cir. Dec. 23, 2025))); *see also Bennett v. Perf OpCo, LLC*, No. 26-cv-1822, 2026 WL 1761147, at *1 (W.D. Wash. Jun. 18, 2026) (noting inconsistency). Moreover, as explained, *this* Court has uniformly rejected Article III standing based on allegations similar to Plaintiff's.

Article III standing requires the *plaintiff's intangible injury*—not the *defendant's conduct*—to closely resemble a historical common law analogue. *Smith*, 2026 WL 1745684, at *2. Plaintiff's alleged injuries bear no such resemblance here.

Plaintiff has not alleged an intangible injury akin to a historical common law analogue for several reasons. First, with respect to the privacy interest, this Court has repeatedly held that there is no privacy invasion—and thus no concrete injury—where the plaintiff fails to "allege that all emails were unwanted or that they ever sought to stop receiving them." *Carter*, 2026 WL 1429258, at *23; *accord Crooks*, 2026 WL 1265422, at *5; *Mulanena*, 2026 WL 1214932, at *4–7. Second, as Judge Hollander of this Court explained regarding very similar allegations, to establish a "close relationship" to a claim of fraud, the plaintiff must plead detrimental reliance. *Carter*, 2026 WL 1429258, at *25 (citing *Pruitt v. Resurgent Cap. Servs., LP*, 610 F. Supp. 3d 775, 781 (D. Md. 2022)). Third, a "close relationship" to a private nuisance claim in Maryland exists only where the plaintiff alleges substantial and unreasonable interference with the use and enjoyment of property. *E.g.*, *id.* (citations omitted). Consequently, there is no "concrete injury sufficient to confer Article III standing" where, as here, "the Complaint contains no allegation of reliance, no allegation of a purchase influenced by the misleading subject lines, and no allegation of any other tangible or intangible harm beyond the fact of receiving emails with allegedly deceptive subject lines."[9] *Id.* at *26.

---

[9] To support their argument of injury based on a common law analogue, Defendants point only to Plaintiff's assertion that "consumers are being seduced into opening emails that they would have deleted or ignored." (ECF No. 35 at 19, 22 (quoting ECF No. 1-1 ¶ 25)). However, that allegation was prefaced by Plaintiff citing statistics, not by Plaintiff claiming that she or any members of the putative class *were* "seduced." *See* (ECF No. 1-1 ¶ 25 & n.1 (alleging "22% open rate" of subject lines conveying urgency (citations omitted)). As the Supreme Court has made clear, "[e]very class member must have Article III standing in order to recover individual damages, [as] 'Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not.'" *TransUnion*, 594 U.S. at 431 (citation omitted). As such, statistical probability that some fraction

11

Nor do Plaintiff's allegations of harassment or annoyance create a separate, concrete injury. Although Defendants argue that Plaintiff's allegations about the *volume* of emails and assertion that she "does not want to receive emails with false and misleading subject lines" form a concrete injury, (ECF No. 35 at 18–19, 22), a defendant cannot "embellish[] . . . otherwise deficient allegations" that were "crafted . . . to circumvent federal jurisdiction." *Carter*, 2026 WL 1429258, at *26 (first quoting *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 182 (4th Cir. 2013); and then quoting *Crouse v. First Nat'l Bank of Pa.*, Civ. No. SAG-24-1216, 2024 WL 4007931, at *2 (D. Md. Aug. 30, 2024)). As the Fourth Circuit has reasoned, "it would be an end-run around the qualifications for constitutional standing if any nebulous frustration resulting from a statutory violation would suffice." *Dreher v. Experian Info. Sols.*, 856 F.3d 337, 346 (4th Cir. 2017). Absent further harm, "alleged inundation with voluminous deceptive marketing emails itself" is not a cognizable injury-in-fact. *Carter*, 2026 WL 1429258, at *16 (internal quotations and citations omitted). All told, Ms. LaTouche's Complaint contains no allegations of injury other than receipt of numerous allegedly deceptive marketing emails. *See generally* (ECF No. 1-1). Plaintiff "hasn't adequately pled that [s]he was injured by the alleged statutory violation at all—much less in a way that closely relates to a traditional analog for a federal lawsuit." *O'Leary v. TrustedID, Inc.*, 60 F.4th 240, 246 (4th Cir. 2023). Defendants cannot inject what they perceive as "'real world' injuries" into Plaintiff's Complaint.

---

of a population experienced harm cannot serve as a vehicle for any individual plaintiff to establish the concrete, particularized injury Article III requires. *See generally id.* (rejecting relevance of class-wide harm statistics in considering whether each individual plaintiff can point to a concrete injury).

Finally, Plaintiff's request for injunctive relief based on irreparable harm by future emails do not confer standing. As Judge Hollander has aptly concluded, "[t]he possibility of receiving more emails with misleading subject lines is no more a cognizable future injury than the emails already received."[10] *Carter*, 2026 WL 1429258, at *28. That is, if Plaintiff's allegations regarding receipt of emails in the past are not sufficient to confer a concrete injury for purposes of Article III standing, then the threat of future emails is equally insufficient to allege concrete harm. As such, Plaintiff's request for injunctive relief in Count II cannot confer Article III standing. Ms. LaTouche's Complaint alleges statutory harm alone without any concrete harm. Accordingly, True Religion has not met its burden to show that Ms. LaTouche has suffered a concrete injury in fact as required for Article III standing. Thus, this Court lacks subject matter jurisdiction, and this case must be REMANDED to the Circuit Court for Baltimore City, Maryland. *See Wells*, 150 F.4th at 308; 28 U.S.C. § 1447(c).

---

[10] Moreover, it is not clear that injunctive relief is even *available* as a remedy for violations of the MCEMA. *See Carter*, 2026 WL 1429258, at *27 ("[T]he MCEMA does not create a private right to injunctive relief . . . .").

## CONCLUSION

For the reasons stated above, it is this 3rd day of August 2026, hereby ORDERED that:

1.  This case shall be REMANDED to the Circuit Court for Baltimore City, Maryland;

2.  True Religion's Motion to Dismiss (ECF No. 15) remains pending upon remand;

3.  This case shall be CLOSED; and,

4.  The Clerk of Court shall transmit copies of this Memorandum Order to counsel of record.

/s/

Richard D. Bennett
United States Senior District Judge